

1  VENABLE LLP
2  Richard J. Frey (SBN 174120)
   Tamany Vinson Bentz (SBN 258600)
3  Melissa C. McLaughlin (SBN 273619)
   Email:   rjfrey@venable.com
4           tjbentz@venable.com
            mcmclaughlin@venable.com
5  2049 Century Park East, Suite 2100
   Los Angeles, CA  90067
6  Telephone:  (310) 229-9900
   Facsimile:   (310) 229-9901
7
   VENABLE LLP
8  Marcella Ballard (*Pro Hac Vice* Application Forthcoming)
   Email:   mballard@venable.com
9  1270 Avenue of the Americas, 25th Floor
   New York, NY 10020
10 Telephone:  (212) 307-5500
   Facsimile:   (212) 307-5598

11

12 Attorneys for Plaintiff Playboy Enterprises
   International, Inc.

13        **UNITED STATES DISTRICT COURT**

14   **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

15             **WESTERN DIVISION**

16

17 PLAYBOY ENTERPRISES
   INTERNATIONAL, INC., a Delaware
18 corporation,

19              Plaintiff,

20        v.

21 PLAY BEVERAGES, LLC, a Delaware
   limited liability company; CIRTRAN
22 BEVERAGE CORPORATION, a Utah
   corporation; and CIRTRAN
23 CORPORATION, a Nevada corporation,

24              Defendants.

25

26

27

28

CASE NO.

**CV12-10590** SJO(Ex)

**COMPLAINT**

FILED
CLERK, U.S. DISTRICT COURT
DEC 11 2012
CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

COMPLAINT

6221041-v9

# COMPLAINT

Plaintiff Playboy Enterprises International, Inc. ("Playboy" or "Plaintiff") alleges the following against Defendants Play Beverages, LLC, CirTran Beverage Corporation, and CirTran Corporation (collectively, "Defendants"):

## INTRODUCTION

1.      Playboy is one of the most recognized and popular consumer brands in the world.  Playboy is a media and lifestyle company that markets the brand through a wide range of media properties and licensing initiatives. The company publishes *Playboy* magazine in the United States and abroad and creates content for distribution via television networks, websites, mobile platforms and radio. Through licensing agreements, the Playboy brand appears on a wide range of consumer products in more than 150 countries as well as retail stores and entertainment venues.

2.      This is an action for trademark infringement and other related claims arising from Defendants' unauthorized use of Playboy's registered trademarks: PLAYBOY and the Rabbit Head Design ("the Playboy Marks").

## JURISDICTION AND VENUE

3.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1338(a), which confer original jurisdiction upon this Court for civil actions arising under the laws of the United States and any act of Congress relating to trademarks, respectively.

4.      Defendants are subject to the personal jurisdiction of this Court because, among other things, Defendants have purposefully availed themselves of the benefits of doing business in the State of California, by advertising and selling goods to the residents of California and by causing injury to Playboy within California.

5.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b)(1), b)(2) and (c)(2) because Defendants are subject to personal jurisdiction

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1

6221041-v9

in this district and therefore are residents of this district, and because a substantial part of the events giving rise to Playboy's claims took place in this district.

## THE PARTIES

6.     Playboy Enterprises International, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Beverly Hills, California.  Playboy Enterprises International, Inc. is a wholly-owned subsidiary of Playboy Enterprises, Inc., which is also a corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Beverly Hills, California.

7.     Upon information and belief, Defendant Play Beverages, LLC ("PlayBev") is a limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business in West Valley City, Utah.  Upon information and belief, at least one member of PlayBev, Fadi Nora, is a citizen and resident of California and is domiciled in California.

8.     Upon information and belief, Defendant CirTran Beverage Corporation ("CBC") is a corporation organized and existing under the laws of the State of Utah, with its principal place of business in West Valley City, Utah.

9.     Upon information and belief, Defendant CirTran Corporation ("CirTran") is a corporation organized and existing under the laws of the State of Nevada, with its principal place of business in West Valley City, Utah.  The domain name www.playbev.com is registered to CirTran.

10.     Upon information and belief, CBC is a subsidiary or division of CirTran, and PlayBev is a subsidiary, division, affiliate, or other related company of CBC.

11.     Upon information and belief, at all relevant times, Defendants were acting as agents of each other.

12.     Until recently, PlayBev was in bankruptcy proceedings in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  (*See*

2

6221041-v9

1    Order Dismissing Case, attached hereto as Exhibit A).

2        13.    Upon information and belief, CBC was formed by CirTran for the

3    purpose of manufacturing, marketing, and distributing PlayBev's Playboy-licensed

4    products.  Upon information and belief, CBC manufactures, markets, distributes,

5    and sells PlayBev's Playboy-licensed products in the United States pursuant to an

6    agreement between PlayBev and CBC.

7                        **FACTUAL BACKGROUND**

8                          The Playboy Brand

9        14.    Playboy is a brand-driven, international multi-media entertainment

10   company.  Since 1954, Playboy has been a leader in the development and

11   distribution of lifestyle entertainment for adult audiences, and is perhaps best

12   known as the publisher of *Playboy* magazine, one of the world's best-selling men's

13   magazines.

14       15.    Through Playboy's extensive marketing efforts, media projects, and

15   product licensing initiatives, Playboy has become one of the world's most well-

16   recognized brands and has built substantial consumer good will associated with the

17   Playboy Marks.  Playboy's brand recognition and the hundreds of federally

18   registered trademarks that it owns are its most valuable assets.

19                        The Infringed Trademarks

20       16.    Playboy owns over 250 federally registered trademarks.  These

21   include registrations for the Playboy Marks in several categories, including Class

22   32, the category covering energy drinks, as follows.

| MARK | FILING DATE | DATE OF FIRST USE IN COMMERCE | REGISTRATION NUMBER |
|------|-------------|-------------------------------|---------------------|
| PLAYBOY | 11/14/2006 | 4/1/2008 | 3,496,428 |

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

3

6221041-v9

| Rabbit Head Design | 11/14/2006 | 4/1/2008 | 3,496,429 |
|---|---|---|---|

17.    The Class 32 registrations for the Playboy Marks are attached hereto as Exhibit B.

18.    Each year, Playboy spends millions of dollars advertising, promoting, developing, and protecting its trademarks, including the Playboy Marks, which are central to Playboy's success and the success of its United States and worldwide licensees.

19.    Playboy uses or licenses others to use the Playboy Marks to promote the Playboy brand and to market, advertise, and sell consumer goods and services. Playboy's robust licensing program includes licensing in the category of beverages in general and energy drinks specifically.

<u>The Parties' Now-Expired License Agreement</u>

20.    PlayBev is a former licensee of Playboy.  In 2006, PlayBev and Playboy entered into a license agreement, under which PlayBev had the limited right to manufacture and sell certain non-alcoholic beverages, including Playboy-branded energy drinks (the "License Agreement").

21.    On April 26, 2011, a petition was filed by several creditors of PlayBev commencing a Chapter 7 bankruptcy proceeding against PlayBev as an involuntary debtor in the United States Bankruptcy Court for the District of Utah (the "Bankruptcy Court").  Shortly thereafter, PlayBev obtained an order converting the proceeding to a voluntary bankruptcy under Chapter 11.

22.    By its terms, the License Agreement was due to expire on March 31, 2012.  As the time approached for the expiration of the License Agreement, in light of negotiations then occurring in the bankruptcy proceeding, Playboy and PlayBev entered into a written agreement to extend the expiration date of the License Agreement to July 31, 2012.  PlayBev sought and obtained an order from the

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

6221041-v9

1   Bankruptcy Court approving the parties' agreement to extend the expiration date of

2   the License Agreement.   (*See* Motion to Approve Extension Agreement and Order

3   Approving Extension Agreement, attached hereto as Exhibits C and D,

4   respectively).

5       23.   In July of 2012, Playboy and PlayBev entered into a second extension

6   agreement, which was also approved by the Bankruptcy Court (the "Second

7   Extension Agreement").   (*See Ex Parte* Motion to Approve Second Extension

8   Agreement and Order Approving Second Extension Agreement, attached hereto as

9   Exhibits E and F, respectively).

10      24.   The Second Extension Agreement set forth three alternative expiration

11  dates for the License Agreement, depending on the circumstances.  First, it

12  specified that the License Agreement would expire on September 30, 2012.

13  Second, it provided an alternative expiration date for the License Agreement if

14  PlayBev obtained an order confirming its chapter 11 plan of reorganization by

15  September 30, 2012.  Third, it provided that it would "terminate automatically and

16  without further action by either party or the Bankruptcy Court" if PlayBev's

17  proposed reorganized debtor did not make a mandatory $2 million payment into

18  escrow for the benefit of Playboy within a specified time-frame.

19      25.   All expiration dates in the Second Extension Agreement have passed:

20  (i) PlayBev's proposed reorganized debtor did not make the mandatory $2 million

21  escrow payment; (ii) PlayBev cancelled its confirmation hearing and therefore did

22  not obtain confirmation of its chapter 11 plan of reorganization; and (iii) the

23  expiration date of September 30, 2012 also has passed.

<u>Defendants' Infringing Activities</u>

25      26.   PlayBev's license agreement with Playboy has expired.  PlayBev is

26  not currently authorized to use the Playboy Marks.

27      27.   CirTran and CBC, who had derived all rights from PlayBev with

28  respect to the use of the Playboy Marks, likewise have no right to use the Playboy

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

5

6221041-v9

1  Marks.  CirTran, however, continues to act as though PlayBev's license agreement

2  is still in force.  (*See* CirTran Corporation Form 10-Q, dated November 30, 2012,

3  available at http://www.cirtran.com/ (under "Investor Relations," "S.E.C.

4  Filings")).

5       28.    Defendants use and, upon information and belief, will continue to use

6  the Playboy Marks in their advertisement, promotion, distribution, and sales of

7  Playboy Energy Drink.

8       29.    Playboy Energy Drink is sold in California, and is advertised,

9  marketed, and promoted in California.

10      30.    Defendants advertise and promote Playboy Energy Drink through

11  their websites www.playbev.com, and www.cirtran.com (which are accessible in

12  California), and otherwise.

13      31.    Defendants own, operate and/or use the domain names

14  www.playbev.com and www.cirtran.com.

15      32.    The Playboy Marks are prominently displayed on the above-named

16  websites and on Playboy Energy Drink itself, which continues to be advertised,

17  promoted, and distributed.

18      33.    Defendants state on www.playbev.com that PlayBev is an official

19  licensee of Playboy and that PlayBev's use of the word "Playboy" and the Rabbit

20  Head Design is under license.  However, these statements are not true, as the

21  License Agreement has expired and Playboy has advised Defendants of this fact.

22                            Harm to Playboy

23      34.    Defendants' infringing conduct is depriving Playboy of the absolute

24  right to control the quality of the Playboy Marks.  Playboy has spent many years

25  building up enormous goodwill and value associated with the Playboy Marks,

26  which Defendants are now jeopardizing.  Playboy cannot control this goodwill

27  while Defendants continue infringing upon the Playboy Marks.

28      35.    In addition, Defendants' infringement is damaging Playboy's

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

6

6221041-v9

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

reputation as a company.  Defendants' blatantly infringing conduct conveys to the public and to the marketplace that Playboy's intellectual property can be taken advantage of and that its valuable brand can be used in an manner that is detriment to its business interests.  This damage to Playboy's reputation will not only affect the Playboy Marks in this specific category, but will affect the brand as a whole, across all licensing categories.

36.    Finally, Defendants' infringement is irreparably harming the energy drink category itself.  Defendants' actions are tarnishing the category because they continue to represent their use of the Playboy Marks as authorized by Playboy, when that is not the case.  As long as Defendants' infringement causes confusion, Playboy is hindered in its ability to control the use of its intellectual property in, and to capitalize on, this licensing category.

**COUNT I**
**Trademark Infringement (Against all Defendants)**
**(15 U.S.C. § 1114)**

37.    Playboy specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

38.    Defendants' conduct constitutes trademark infringement of Playboy's registered marks in violation of Section 32 of the Lanham Act, 15 U.S.C. § 1114.

39.    Defendants are using the Playboy Marks in interstate commerce in connection with their advertisement, promotion, distribution, and sale of Playboy Energy Drink.

40.    Without authorization or consent of Playboy, Defendants have used, and continue to use, the Playboy Marks in connection with Defendants' advertisement, promotion, distribution, and sale of Playboy Energy Drink.

41.    Defendants' unauthorized use of the Playboy Marks is likely to cause confusion or to cause mistake or to deceive as to origin, approval, connection, sponsorship, or affiliation, to the detriment of Playboy and its customers.

42.    Defendants' conduct has caused, and unless restrained by the Court,

7

6221041-v9

1    will continue to cause irreparable injury to Playboy.

2        43.    Upon information and belief, Defendants' aforementioned infringing

3    conduct has been willful, wanton, and malicious, and done with the intent to

4    deceive.  Playboy is therefore entitled to an award of its reasonable attorneys' fees

5    and costs.

6        44.    Playboy has no adequate remedy at law, and is further entitled to a

7    preliminary and permanent injunction against Defendants' infringing conduct.

8

9                        **<u>COUNT II</u>**
**False Advertising (Against all Defendants)**
**(15 U.S.C. § 1125(a))**

10

11        45.    Playboy specifically incorporates and references the allegations

12    asserted in each of the preceding paragraphs, as if fully set forth herein.

13        46.    Defendants' advertising on their websites that PlayBev is an official

14    licensee of Playboy and that PlayBev's use of the Playboy Marks is under license

15    is literally false or likely to mislead customers.

16        47.    Upon information and belief, Defendants' false advertising is likely to

17    influence purchasing decisions of customers.

18        48.    As the owner of the Playboy Marks, Playboy was and is injured by

19    Defendants' misrepresentations.

20        49.    Defendants' conduct has caused, and unless restrained by the Court,

21    will continue to cause irreparable injury to Playboy.

22        50.    Upon information and belief, Defendants' aforementioned false

23    advertising has been willful, wanton, and malicious, and done with the intent to

24    deceive.  Playboy is therefore entitled to an award of its reasonable attorneys' fees

25    and costs.

26        51.    Playboy has no adequate remedy at law, and is further entitled to a

27    preliminary and permanent injunction against Defendants' false advertising.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

8

COMPLAINT

6221041-v9

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

## COUNT III
### Anti-Cybersquatting Consumer Protection Act (Against Defendant Play Beverages, LLC)
### (15 U.S.C. § 1125(d))

52.    Playboy specifically incorporates and references the allegations asserted in each of the preceding paragraphs, as if fully set forth herein.

53.    PlayBev operates and/or uses the domain name www.playboyenergy.com.  PlayBev no longer has the right to use or operate this domain name because PlayBev's license agreement with Playboy has expired and Playboy has advised PlayBev of this fact.

54.    Playboyenergy.com is identical and/or confusingly similar to Playboy's distinctive trademark, "Playboy," and PlayBev's use and/or operation of the website falsely and confusingly suggests that PlayBev is affiliated with Playboy.

55.    Upon information and belief, PlayBev uses and/or operates this domain name in bad faith and with intent to profit from using the Playboy Marks.

56.    PlayBev has no intellectual property rights or any other rights in the Playboy Marks.

57.    PlayBev's use and/or trafficking in the domain name www.playboyenergy.com constitutes cybersquatting in violation of 15 U.S.C. § 1125(d), entitling Playboy to relief.

58.    PlayBev's conduct has caused, and unless restrained by the Court, will continue to cause irreparable injury to Playboy.

59.    Upon information and belief, PlayBev's aforementioned infringing conduct has been willful, wanton, and malicious, and done with the intent to deceive.  Playboy is therefore entitled to an award of its reasonable attorneys' fees and costs.

60.    Playboy has no adequate remedy at law, and is further entitled to a preliminary and permanent injunction against PlayBev's infringing conduct.

COMPLAINT

6221041-v9

# PRAYER FOR RELIEF

WHEREFORE, Playboy respectfully requests that this Court:

1.     Issue a preliminary and permanent injunction prohibiting Defendants, their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all persons in active concert or participation with them, and mandating that Defendants forever cease and desist and refrain in the future from, anywhere in the world:

a.     Using, in whole or in part, the PLAYBOY designation or Rabbit Head Design (the "Playboy Marks") or any confusingly similar designations;

b.     Manufacturing, advertising, promoting, distributing, making, purchasing, offering for sale or selling any goods or services, including Playboy Energy Drink, containing the Playboy Marks or any confusingly similar designations;

c.     Doing any act or thing that is likely to cause the consuming public to believe that Defendants' goods or services are authorized by Playboy or in some way connected with Playboy and/or Playboy's business, or that is likely to injure or damage Playboy or the Playboy Marks;

d.     In any way infringing or damaging the Playboy Marks; and

e.     Attempting, causing, or assisting any of the above-described acts, including but not limited to enabling others to conduct the scheme described above, or by passing along information to others to allow them to manufacture, advertise, promote, distribute, make, purchase, offer for sale or sell any goods or services containing the Playboy Marks or any confusingly similar designations;

f.     Otherwise competing unfairly with Playboy in any manner.

2.     Enter judgment in favor of Playboy on the counts asserted herein;

3.     Declare this to be an exceptional case pursuant to 15 U.S.C. § 1117;

4.     Award Playboy the costs incurred in bringing this action, including

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

COMPLAINT

6221041-v9

1    attorneys' fees;

2        5.    Order that PlayBev be prohibited from using or operating the domain

3    name www.playboyenergy.com; and

4        6.    Award Playboy such further relief as this Court deems just, proper,

5    and equitable.

6

7

8    Dated:  December 10, 2012            VENABLE LLP

9

10   By: _____

11       Richard J. Frey
         Melissa C. McLaughlin
12       Attorneys for Plaintiff Playboy
         Enterprises International, Inc.
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT

6221041-v9

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

**EXHIBIT A**

**The below described is SIGNED.**

Dated: December 07, 2012 _JT Marker_



JOEL T. MARKER
U.S. Bankruptcy Judge

---

*Prepared and proposed by*

J. Thomas Beckett (5587)
**PARSONS BEHLE & LATIMER**
201 South Main Street. Suite 1800
Salt Lake City, UT 84145-0898
Telephone: (801) 532-1234
tbeckett@parsonsbehle.com

*Attorneys for the Petitioning Creditors*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| In re:                          | Bankruptcy No. 11-26046 JTM      |
|---------------------------------|----------------------------------|
| **PLAY BEVERAGES, LLC,**        | Chapter 11                       |
| Debtor.                         | Honorable Joel T. Marker         |

### ORDER DISMISSING CASE

This matter came before the Court on December 5 and 6, 2012 upon (i) the motion of

Warner Depuy, Lib-MP Beverage, LLC, George Denney, Liberty Beverages LLP and Rhino

Beverages, LLC (the "Petitioning Creditors") (dkt. #338) for an order re-converting this case,

and (ii) the motion of the United States Trustee (dkt # 343) for an order converting or dismissing

this case, under 11 U.S.C. § 1112(b) (collectively, the "Motions").  Matthew M. Boley and

Bryon J. Benevento appeared on behalf of the Debtor.  Laurie A. Cayton appeared on behalf of

the United States Trustee.  J. Thomas Beckett, Michael W. Young and Zack L. Winzeler

appeared on behalf of the Petitioning Creditors.  Danny C. Kelly and Christopher N. Weiss

4843-3235-5346.1

**EXHIBIT A - 4**

appeared on behalf of Playboy Enterprises International, Inc.  Russell C. Fericks appeared on

behalf of Cirtran Beverage Corp.

Evidence was presented.  Gil A. Miller and Iehab Hawatmeh testified.

After reviewing the Motions, the responses to the Motions filed by the Debtors and other

parties-in-interest and other matters of record, considering the Debtor's voluntary stipulation to

dismissal of the bankruptcy case, based upon the evidence received at the hearing on the

Motions, and the Court having announced its findings of fact and conclusions of law on the

record in open Court:

**IT IS HEREBY ORDERED** as follows:

1.  The Motions are granted in part and denied in part, as described herein.

2.  The above-captioned case shall be, and hereby is, dismissed, effective immediately

upon entry of this Order.

3.  Pursuant to the Debtor's stipulation, the Debtor shall not file a petition for relief under

title 11 of the United States Code prior to the expiration of 180 days from the date of entry of this

Order.

4.  The automatic stay is terminated and no longer in effect immediately upon entry of

this order.

5.  All pending motions, applications, contested matters and other proceedings in the

above-captioned case are stricken as moot.

6.  Adversary Proceeding No. 12-2324 is dismissed without prejudice.

------------------------------------------END OF DOCUMENT------------------------------------------

4843-3235-5346. 12

**EXHIBIT A - 5**

**EXHIBIT  B**

Int. Cl.: 32

Prior U.S. Cls.: 45, 46, and 48

**United States Patent and Trademark Office**

Reg. No. 3,496,428

Registered Sep. 2, 2008

## TRADEMARK
### PRINCIPAL REGISTER

# PLAYBOY

PLAYBOY ENTERPRISES INTERNATIONAL, INC. (DELAWARE CORPORATION)
680 N. LAKE SHORE DRIVE
CHICAGO, IL 60611

FOR: ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 4-1-2008; IN COMMERCE 4-1-2008.

THE MARK CONSISTS OF STANDARD CHAR-ACTERS WITHOUT CLAIM TO ANY PARTICULAR FONT, STYLE, SIZE, OR COLOR.

SN 77-043,700, FILED 11-14-2006.

KAREN BRACEY, EXAMINING ATTORNEY

**EXHIBIT B - 6**

Int. Cl.: 32

Prior U.S. Cls.: 45, 46, and 48

Reg. No. 3,496,429

## United States Patent and Trademark Office

Registered Sep. 2, 2008

### TRADEMARK
### PRINCIPAL REGISTER



PLAYBOY ENTERPRISES INTERNATIONAL, INC. (DELAWARE CORPORATION)
680 N. LAKE SHORE DRIVE
CHICAGO, IL 60611

FOR: ENERGY DRINKS, IN CLASS 32 (U.S. CLS. 45, 46 AND 48).

FIRST USE 4-1-2008; IN COMMERCE 4-1-2008.

THE MARK CONSISTS OF RABBIT HEAD DESIGN.

SN 77-043,708, FILED 11-14-2006.

KAREN BRACEY, EXAMINING ATTORNEY

**EXHIBIT B - 7**

**EXHIBIT  C**

Matthew M. Boley, Esq. (8536)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT  84111
Telephone: (801) 363-4300
Facsimile:  (801) 363-4378
E-mail:  mmb@pkhlawyers.com

*Attorneys for* debtor-in-possession
PLAY BEVERAGES, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PLAY BEVERAGES, LLC,**<br><br>Debtor. | Bankruptcy No. 11-26046 JTM<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

## MOTION TO APPROVE
## EXTENSION AGREEMENT (AND RESERVATION OF RIGHTS)
## BETWEEN THE DEBTOR AND PLAYBOY

PLAY BEVERAGES, LLC, debtor and debtor-in-possession (the "**Debtor**") in the

above-captioned chapter 11 bankruptcy case (the "**Case**"), through counsel, moves the Court for

entry of an order approving the Extension Agreement (and Reservation of Rights), a copy of

which is attached hereto as **Exhibit "A"** (the "**Extension Agreement**").  In further support of the

relief requested, the Debtor respectfully states as follows.

**I.      JURISDICTION AND VENUE**

1.      The Court has jurisdiction to hear this motion pursuant to 28 U.S.C. §§ 1334 and

157.

2.      This motion represents a core proceeding pursuant to 28 U.S.C. §§ 157(b).

3.      Venue of the Case and of this motion is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.

4.      The legal predicates for the relief sought in this motion are 11 U.S.C. §§ 105, 363,

1107 and/or 1108.

{00141404.DOC / 5 }

**EXHIBIT C - 8**

## II.   BACKGROUND

5.      This Case was filed on April 26, 2011 (the "**Petition Date**"), when three

purported creditors of the Debtor filed an involuntary petition seeking an order for relief against

the Debtor under title 11 the United States Code (the "**Bankruptcy Code**").

6.      On August 12, 2011 (the "**Relief Date**"), the Debtor consented to, and the Court

entered, an order for relief against the Debtor and converted the Case to chapter 11.

7.      The Debtor believes that it can reorganize its financial affairs and, thereby,

maximize returns for its creditors and equity holders.

8.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is

operating its business and managing its property as a debtor-in-possession.

9.      No examiner or trustee has been appointed in the Case, and no official committee

of creditors or equity interest holders has yet been established.

## III.   FACTS RELEVANT TO THE MOTION

10.     The Debtor, as licensee, and Playboy Enterprises International, Inc., as licensor

("**Playboy**"), are parties to that certain License Agreement, dated as of November 1, 2006 (as

amended, the "**License Agreement**").

11.     Paragraph S.9 of the Schedule to the License Agreement (the "**Schedule**")

provides that the "Expiration Date" of the License Agreement is "March 31, 2012; subject to the

Renewal Term in Paragraph 1.b.(ii) and the termination provisions set forth in the Agreement."

12.     Paragraphs 1.b.(ii) and 1.b.(iii) of the License Agreement provide for the possible

renewal of Licensee's rights as licensee under the License Agreement for additional five-year

renewal terms on the conditions set forth therein.

13.     The Debtor and Playboy have engaged in extensive good faith  negotiations

regarding (a) a settlement of all claims between them, and (b)  a new license agreement with the

Debtor.

14.     Although these negotiations have not yet culminated in a comprehensive binding agreement, the Debtor and Playboy have agreed in principle upon many core business terms for the potential new license agreement.

15.     The Debtor believes that it will be able to negotiate a new agreement with Playboy, and that it will be able to formulate and propose a plan of reorganization based on the new agreement.

16.     Accordingly, the Debtor and Playboy have entered into the Extension Agreement to extend the term of the License Agreement for a short period of time, to permit the parties to continue negotiations and to provide the Debtor a window of time to seek approval of any agreement that may be reached pursuant to confirmation of a plan of reorganization.

17.     Among other things, this avoids potential adverse effects upon the Debtor's business, its relationship with national and international distributors of Playboy Energy Drink™ and its ability to reorganize if the Debtor's rights under the License Agreement were to expire on March 31, 2012.

18.     The Extension Agreement is intended to, and will, have the effect of extending the term of the License Agreement by changing the Expiration Date" specified in paragraph S.9 of the Schedule and referenced in paragraph 1.b.(i) of the License Agreement from March 31, 2012 to  July 31, 2012.  No other terms of the License Agreement will be changed by the Extension Agreement.

19.      The Extension Agreement shall not constitute a waiver of any rights or remedies available to the Debtor or Playboy under the License Agreement or otherwise, and the Debtor and Playboy expressly preserve and reserve any and all of respective rights, claims and defenses of the Debtor and Playboy under the License Agreement or otherwise.

20.     The Debtor has exercised reasonable business judgment in entering into the Extension Agreement, and believes that the agreement is in the best interests of the estate.

## IV.    RELIEF REQUESTED

21.    The Debtor respectfully requests the entry of an order approving the Extension Agreement.

22.    Additionally, to the extent it is applicable, the Debtor respectfully requests that, under the circumstances of this case, the Court waive the fourteen day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h) and/or any other applicable statute or rule.

## V.    BASIS FOR RELIEF REQUESTED

23.    Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business.

24.    Usually, transactions such as extending the dates of its contracts as contemplated by the Extension Agreement is within the ordinary course of a debtor's business, and does not require any authority or court approval beyond the general authority granted under sections 1107 and 1108 of the Bankruptcy Code.  The Debtor believes that entering into the Extension Agreement should be viewed as and deemed to be an act within the ordinary course of the Debtor's business.

25.    The Debtor does not believe that the Extension Agreement contemplates the use, lease or sale of property of the estate.  To the extent it does, the Debtor submits that such use is within the ordinary course of the Debtor's business and, therefore, is authorized pursuant to section 363(c) of the Bankruptcy Code.

26.    In any event, pursuant to section 363(b) of the Bankruptcy Code and subject to the requirement of prior notice and a hearing, the Debtor is empowered to "use, sell, or lease, other than in the ordinary course of business, property of the estate."  11 U.S.C. § 363(b).

27.    The Debtor, in the exercise of its business judgment, has determined that entering into the Extension Agreement is in the best interests of its chapter 11 bankruptcy estate.

28.    While reserving all of the Debtor's rights and claims, the Extension Agreement ensures that the Debtor's rights as a licensee of Playboy under the License Agreement will

**EXHIBIT C - 11**

continue for a short period of time.  The Debtor believes that the extension period provided under the Extension Agreement will be adequate to permit the Debtor (a) to successfully conclude negotiations with Playboy, and (b) to obtain confirmation of a plan of reorganization.

29.    In short, the Extension Agreement maintains the status quo while the Debtor continues to negotiate terms with Playboy regarding settlement of their disputes, the possibility of a future licensee relationship and plan treatment.

30.   **VI.    PRAYER FOR RELIEF**

WHEREFORE, the Debtor asks that this Court enter an Order:

*A.*    GRANTING the Motion;

*B.*    approving the Extension Agreement;

*C.*    for cause shown, waiving the fourteen-day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h) and/or under any other applicable statute or rule; and

*D.*    granting such other and further relief as the Court deems just and proper.

DATED this 22nd day of March, 2012.

PARSONS KINGHORN HARRIS


/s/  Matthew M. Boley
Matthew M. Boley
*Attorneys for* debtor-in-possession
PLAY BEVERAGES, LLC

**EXHIBIT C - 12**

# EXHIBIT A

**EXHIBIT C - 13**

**EXTENSION AGREEMENT**
**(AND RESERVATION OF RIGHTS)**

THIS EXTENSION AGREEMENT (the "**Extension Agreement**") is made as of the 22nd day of March, 2012, by and between PLAY BEVERAGES, LLC, a Delaware limited liability company and debtor-in-possession ("**Licensee**"), and PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation ("**Licensor**"), each a "**Party**" and collectively the "**Parties**".

R E C I T A L S

WHEREAS, on April 26, 2011 (the "**Petition Date**"), an involuntary petition for relief was filed against Licensee pursuant to title 11 the United States Code (the "**Code**") in the United States Bankruptcy Court for the District of Utah (the "**Court**"), thereby commencing the bankruptcy case styled <u>In re Play Beverages, LLC</u>, Bankr. No. 11-26046 (the "**Case**"); and

WHEREAS, on August 12, 2011 (the "**Relief Date**"), the Court entered an order for relief in the Case and converted the Case to chapter 11; and

WHEREAS, since the Relief Date, Licensee has operated its business and managed its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Code; and

WHEREAS, Licensor and Licensee are parties to that certain License Agreement, dated as of November 1, 2006 (as amended, the "**License Agreement**"); and

WHEREAS, paragraph S.9 of the Schedule to the License Agreement (the "**Schedule**") provides that the Expiration Date (as defined in the License Agreement) of the License Agreement is "March 31, 2012; subject to the Renewal Term in Paragraph 1.b.(ii) and the termination provisions set forth in the Agreement."

WHEREAS, paragraphs 1.b.(ii) and 1.b.(iii) of the License Agreement provide for the possible renewal of the License Agreement for additional five-year renewal terms on the conditions set forth therein;

WHEREAS, Licensee and Licensor have been, and currently are, engaged in extensive good faith negotiations which have resulted in an agreement in principle on many core business terms for a potential new license agreement, pursuant to which the Parties would settle their disputes and the Debtor would, on certain conditions, be a licensee of Playboy under the potential new license agreement; and

WHEREAS, Licensee and Licensor desire to extend the term of the License under the License Agreement for a short period of time to allow the Parties sufficient time to finish their current negotiations and to allow the Debtor sufficient time to formulate and pursue the confirmation of a plan of reorganization based on the potential new agreement; and

WHEREAS, the Parties intend to preserve all rights and remedies that each Party may currently have available to it under the License Agreement or otherwise while their further negotiations are conducted.

A G R E E M E N T

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Parties agree as follows:

1.      <u>Approval by the Court</u>.  This Extension Agreement is subject to notice to creditors in the Case and approval by the Court.  Upon the execution of this Extension Agreement, the Debtor will prepare, file, and notice for hearing a motion for approval of this Extension Agreement.  The Debtor agrees to use its best efforts to secure entry of a final order of the Court in the Case approving this Extension Agreement (the "**Approval Order**").  This Extension Agreement shall be binding upon the Parties as of the date when each of the Parties has executed this Agreement, but the obligations of the Parties hereunder are subject to and contingent upon the entry of the Approval Order.

**EXHIBIT C - 14**

2.   <u>Extension of Expiration Date</u>.  Paragraph S.9 of the Schedule is hereby modified by substituting the date of July 31, 2012 for the current date of March 31, 2012.  Thus, as modified,  Section S.9 of the Schedule shall provide as follows:

### S.9   THE EXPIRATION DATE

July 31, 2012; subject to the Renewal Term in Paragraph 1.b(ii) and the termination provisions set forth in the Agreement.

Except as specifically provided herein, the terms and provisions of the License Agreement shall remain the same and be unaffected by this Extension Agreement.

3.   <u>Termination of Extension Agreement</u>.  This Extension Agreement shall terminate on the earlier of:

(a) July 31, 2012; or

(b) fifteen calendar days after either Licensee or Licensor, acting in good faith, provides written notice to the other that (i) the Parties have reached an impasse in their negotiations, or (ii)  such Party has determined that it does not desire to enter into a new license agreement with the other.

4.   <u>Purpose of Extension Agreement</u>.  The sole purpose of this Extension Agreement is to extend the Expiration Date of the License Agreement  to provide the Parties sufficient time to finish their current negotiations for a potential new license agreement and provide the Debtor sufficient time to formulate and pursue the confirmation of a plan of reorganization based on the potential new agreement.  Under no circumstances shall any term of this Extension Agreement be construed (a) as a consent, waiver or release of any kind; (b) to give rise to a claim or defense by reason of estoppel, laches, abandonment, or acquiescence; or (c) to otherwise to affect in any way the rights of the Parties under the License Agreement, under the Code and/or under other applicable law.

5.   <u>No Waiver and Reservation of Rights</u>.  By entering into this Extension Agreement, neither Licensee nor Licensor intends to in any way waive or release any of their respective rights, claims and defenses against the other, and this Extension Agreement shall be construed accordingly.  Licensee and Licensor hereby expressly reserve any and all of their respective rights, claims, and defenses that may be available to Licensee and/or Licensor under the License Agreement, the Code and/or otherwise applicable law.  Accordingly, and without limiting the foregoing:

a.   neither of the Parties intends to, or does, release the other Party (or any third-parties) of or from any claims or liabilities;

b.   this Extension Agreement shall not be construed as Licensor's "written approval for the Agreement to renew" as referenced  in Paragraphs 1.b.(ii) and 1.b.(iii) of the License Agreement;

c.   this Extension Agreement is not intended to be, and shall not operate or be construed as, a renewal of the License Agreement,  and

d.   this Extension Agreement shall not be construed as consent or agreement by either Party to either the assumption or the rejection of the License Agreement pursuant to section 365 of the Code.

6.   <u>Public Statements</u>.  Any and all public statements, including without limitation court filings, relating to this Extension Agreement and/or the subject matter hereof must be pre-approved in writing by both of the Parties.

7.   <u>Binding Effect; Entire Agreement; Amendment</u>.  Subject to entry of the Approval Order, this Extension Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, assigns, officers, directors, employees, agents, representatives, subrogees and to all persons or entities claiming by, through or under them.  This Extension Agreement represents the entire understanding between the Parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Extension Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Extension Agreement. Neither this Extension Agreement nor any provisions hereof may be changed, discharged or terminated orally, and this Extension Agreement may be modified or amended only by an instrument in writing, signed by all Parties.

8.   <u>Governing Law</u>.  This Extension Agreement, and the rights and obligations of the Parties hereunder, shall be construed in accordance with and governed by (a) to the extent applicable, federal bankruptcy law, and (b) in all areas not governed by federal bankruptcy law, by the laws of the State of Utah.

{00141391.DOCX / 3 }                                    2

**EXHIBIT C - 15**

9.     <u>Authorization</u>.  The persons executing this Extension Agreement on behalf of a Party hereby represent and warrant that (subject to Licensee's obligations, if any, under the Code to provide notice and/or to obtain approval by the Court) they are duly authorized and empowered to execute the same, that they have carefully read this Extension Agreement, and that this Extension Agreement represents a binding and enforceable obligation of such Party.

10.     <u>Counterparts; Electronically Transmitted Signatures.</u>  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement. Signatures transmitted by facsimile and/or e-mail shall have the same force and effect as original signatures.

IN WITNESS WHEREOF, each of the Parties has executed this Extension Agreement as of the date first above written.

PLAY BEVERAGES, LLC

By _____

Print Name:  GiL A. Miller
Print Title:  CRO

PLAYBOY ENTERPRISES INTERNATIONAL, INC.

By _____

Print Name:
Print Title:

**EXHIBIT C - 16**

9.    <u>Authorization</u>.  The persons executing this Extension Agreement on behalf of a Party hereby represent and warrant that (subject to Licensee's obligations, if any, under the Code to provide notice and/or to obtain approval by the Court) they are duly authorized and empowered to execute the same, that they have carefully read this Extension Agreement, and that this Extension Agreement represents a binding and enforceable obligation of such Party.

10.    <u>Counterparts; Electronically Transmitted Signatures.</u>  This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement. Signatures transmitted by facsimile and/or e-mail shall have the same force and effect as original signatures.

IN WITNESS WHEREOF, each of the Parties has executed this Extension Agreement as of the date first above written.

**PLAY BEVERAGES, LLC**

By _____
Print Name:
Print Title:

**PLAYBOY ENTERPRISES INTERNATIONAL, INC.**

By _____
Print Name: Rachel Sagan
Print Title: EVP, Business Affairs

**EXHIBIT C - 17**

**EXHIBIT D**

**The below described is SIGNED.**

Dated: March 30, 2012

_____
**JOEL T. MARKER**
**U.S. Bankruptcy Judge**



---

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PLAY BEVERAGES, LLC,**<br><br>Debtor. | Bankruptcy No. 11-26046 JTM<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

---

### ORDER APPROVING
### EXTENSION AGREEMENT (AND RESERVATION OF RIGHTS)
### BETWEEN THE DEBTOR AND PLAYBOY

---

This matter came before the Court on March 30, 2012 at 10:00 a.m. upon the *Motion to Approve Extension Agreement (and Reservation of Rights) Between the Debtor and Playboy*, dated March 22, 2012 [Docket No. 241] (the "**Motion**"), filed by debtor-in-possession Play Beverages, LLC (the "**Debtor**"). Matthew M. Boley appeared on behalf of the Debtor. Danny C. Kelly appeared on behalf of Playboy Enterprises International, Inc. ("**Playboy**"). Other counsel and parties-in-interest entered their appearances on the record.

After reviewing the Motion and such other matters in the file as the Court deemed appropriate, in light of the undisputed facts set forth in the Motion, and after considering such other and further matters as the Court deemed appropriate, the Court hereby

**FINDS AND CONCLUDES** as follows:

A. the Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 157 and 1334;

B. this is a core proceeding pursuant to 28 U.S.C. § 157;

C. notice of the Motion and the hearing thereon was appropriate in the particular circumstances;

D. good cause exists for the relief granted herein;

E.      the Debtor's decision to enter into the *Extension Agreement (and Reservation of Rights)*, a copy of which was attached as Exhibit A to the Motion (the **"Extension Agreement"**), appears to have been a reasonable exercise of business judgment;

F.      the relief granted herein is in the best interest of the Debtor, the Debtor's creditors and the Debtor's bankruptcy estate; and

G.      to the extent the Court made other or additional findings and conclusion on the record during the hearing on the Motion, such findings and conclusions are incorporated herein by reference.

WHEREFORE, based upon the Motion, the Court's findings and conclusions, and good cause appearing, it hereby is

**ORDERED** that:

1.      the Motion shall be, and hereby is, GRANTED;

2.      the Exention Agreements shall be, and hereby is, APPROVED;

3.      the Debtor shall be, and hereby is, AUTHORIZED to enter into the Extension Agreement;

4.      this order shall be, and hereby is, immediately in force and enforceable; and

5.      to the extent the fourteen-day stay referenced under Federal Rule Bankruptcy Procedure 6004(h) and/or any other similar stay as to the immediate enforceability of an order under another rule or statute is or may be applicable, such stay shall be, and hereby is, WAIVED and ordered to be INAPPLICABLE to this Order.

------------------------------------- END OF DOCUMENT -------------------------------------

Approved as to Form:

STOEL RIVES LLP

/s/  Danny C. Kelly
Danny C. Kelly
*Attorneys for* Playboy Enterprises International, Inc.

**EXHIBIT D - 19**

## DESIGNATION OF PARTIES TO BE SERVED

The undersigned hereby designates the following parties to be served a copy of the foregoing **ORDER**:

**(A) By electronic notice delivered via CM/ECF to all persons who are registered to receive such notice and (B) to all others by U.S. Mail, first-class postage prepaid:**

Matthew M. Boley
PARSONS KINGHORN HARRIS
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111

Gil A. Miller
ROCKY MOUNTAIN ADVISORY LLC
215 South State Street, Suite 550
Salt Lake City, UT 84111

Bryon J. Benevento
Kimberly Neville
SNELL & WILMER LLP
15 W. South Temple, Suite 1200
Salt Lake City, UT 84101

J. Thomas Beckett
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT 84111

PLAY BEVERAGES, LLC
Attn: Iehab J. Hawatmeh
4125 South 6000 West
West Valley City, Utah 84128

Laurie A. Cayton, Esq.
OFFICE OF THE UNITED STATES TRUSTEE
405 South Main Street, Suite 300
Salt Lake City, UT 84111

Danny C. Kelly
Mark E. Hindley
Jason W. Crowell
STOEL RIVES LLP
201 South Main, Suite 1100
Salt Lake City, UT 84111

Michael N. Emery
RICHARDS BRANDT MILLER NELSON
299 South Main Street, 15th Floor
Salt Lake City, UT 84111

/s/ Matthew M. Boley

**EXHIBIT D - 20**

**EXHIBIT E**

Matthew M. Boley (8536)
Steven C. Strong (6340)
**PARSONS KINGHORN HARRIS, P.C.**
111 E. Broadway, 11th Floor
Salt Lake City, UT 84111
Telephone: (801) 363-4300
Facsimile: (801) 363-4378
E-mail: mmb@pkhlawyers.com

*Attorneys for* debtor-in-possession
PLAY BEVERAGES, LLC

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PLAY BEVERAGES, LLC,**<br><br>Debtor. | Bankruptcy No. 11-26046 JTM<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

## EX PARTE MOTION TO APPROVE
## SECOND EXTENSION AGREEMENT (AND RESERVATION OF RIGHTS) BETWEEN THE DEBTOR AND PLAYBOY

PLAY BEVERAGES, LLC, debtor and debtor-in-possession (the "**Debtor**") in the

above-captioned chapter 11 bankruptcy case (the "**Case**"), through counsel, moves the Court for

entry of an ex parte order approving the Second Extension Agreement (and Reservation of

Rights), a copy of which is attached hereto as **Exhibit "A"** (the "**Extension Agreement**"). In

further support of the relief requested, the Debtor respectfully states as follows.

**I.      JURISDICTION AND VENUE**

      1.      The Court has jurisdiction to hear this motion pursuant to 28 U.S.C. §§ 1334 and

157.

      2.      This motion represents a core proceeding pursuant to 28 U.S.C. §§ 157(b).

      3.      Venue of the Case and of this motion is proper before this Court pursuant to

28 U.S.C. §§ 1408 and 1409.

      4.      The legal predicates for the relief sought in this motion are 11 U.S.C. §§ 105, 363,

1107 and/or 1108.

**EXHIBIT E - 21**

## II.   BACKGROUND

5.      This Case was filed on April 26, 2011 (the "**Petition Date**"), when three purported creditors of the Debtor filed an involuntary petition seeking an order for relief against the Debtor under title 11 the United States Code (the "**Bankruptcy Code**").

6.      On August 12, 2011 (the "**Relief Date**"), the Debtor consented to, and the Court entered, an order for relief against the Debtor and converted the Case to chapter 11.

7.      The Debtor believes that it can reorganize its financial affairs and, thereby, maximize returns for its creditors and equity holders.

8.      Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is operating its business and managing its property as a debtor-in-possession.

9.      No examiner or trustee has been appointed in the Case, and no official committee of creditors or equity interest holders has yet been established.

## III.   FACTS RELEVANT TO THE MOTION

10.     The Debtor, as licensee, and Playboy Enterprises International, Inc., as licensor ("**Playboy**"), are parties to that certain License Agreement, dated as of November 1, 2006 (as amended, the "**Existing License Agreement**").

11.     As amended pursuant to the court-approved first *Extension Agreement (and Reservation of Rights)*, paragraph S.9 of the Schedule to the License Agreement (the "**Schedule**") provides that the "Expiration Date" of the Existing License Agreement is "July 31, 2012" subject to the Renewal Term in Paragraph 1.b.(ii) and the termination provisions set forth in the License Agreement.

12.     The Debtor and Playboy have engaged in extensive good faith negotiations regarding (a) a settlement of all claims between them, and (b) a new license agreement with the Debtor.

13.     The Debtor believes that it will be able to confirm a plan of reorganization based, in part, on the new license agreement.  The Debtor will be unable, however, to present the plan

**EXHIBIT E - 22**

for confirmation or to obtain entry of an order confirming the plan and approving the new license agreement prior to the July 31, 2012 "Expiration Date" under the Existing License Agreement.

14.      Accordingly, the Debtor and Playboy have entered into the Extension Agreement to extend the term of the Existing License Agreement for a short period of time, to allow the Debtor the opportunity to seek entry of the Confirmation Order and to satisfy the other conditions precedent to the New License Agreement and the settlement.   The Extension Agreement is intended to, and will, have the effect of extending the term of the License Agreement by amending paragraph S.9 of the Schedule to provide the following definition of and terms governing the "Expiration Date":

> Subject to the Renewal Term in Paragraph 1.b(ii) and the termination provisions set forth in the Agreement, the "Expiration Date" shall be September 30, 2012; *provided, however,* that if an order confirming Licensee's chapter 11 plan of reorganization in Case No. 11-26046 is entered on or before September 30, 2012, then the "Expiration Date" shall be the earlier of (a) the last day preceding the Commencement Date (as defined in the new License Agreement between Licensor and PB Energy Corporation), or (b)  October 20, 2012.

No other terms of the Existing License Agreement will be changed by the Extension Agreement.

15.      As specified in paragraph 2 of the Extension Agreement, the Extension Agreement shall terminate automatically and without further action by either party or the Bankruptcy Court in the event that the $2.0 million escrow contemplated to be paid pursuant to the New License Agreement is not funded (a) within 20 days of signature of the New License Agreement, or (b) within such longer period as Playboy may specify in writing (including by e-mail)..

16.      The Extension Agreement shall not constitute a waiver of any rights or remedies available to the Debtor or Playboy under the Existing License Agreement or otherwise, and the Debtor and Playboy expressly preserve and reserve any and all of respective rights, claims and defenses of the Debtor and Playboy under the License Agreement or otherwise.

17.     The Debtor has exercised reasonable business judgment in entering into the Extension Agreement, and believes that the agreement is in the best interests of the estate.

## IV.     RELIEF REQUESTED

18.     The Debtor respectfully requests the entry of an order approving the Extension Agreement.

19.     Additionally, to the extent it is applicable, the Debtor respectfully requests that, under the circumstances of this case, the Court waive the fourteen day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h) and/or any other applicable statute or rule.

## V.     BASIS FOR RELIEF REQUESTED

20.     Pursuant to sections 1107 and 1108 of the Bankruptcy Code, the Debtor is authorized to operate its business.

21.     Usually, transactions such as extending the dates of its contracts as contemplated by the Extension Agreement is within the ordinary course of a debtor's business, and does not require any authority or court approval beyond the general authority granted under sections 1107 and 1108 of the Bankruptcy Code.  The Debtor believes that entering into the Extension Agreement should be viewed as and deemed to be an act within the ordinary course of the Debtor's business.

22.     The Debtor does not believe that the Extension Agreement contemplates the use, lease or sale of property of the estate.  To the extent it does, the Debtor submits that such use is within the ordinary course of the Debtor's business and, therefore, is authorized pursuant to section 363(c) of the Bankruptcy Code.

23.     The Debtor, in the exercise of its business judgment, has determined that entering into the Extension Agreement is in the best interests of its chapter 11 bankruptcy estate.

24.     While reserving all of the Debtor's rights and claims, the Extension Agreement ensures that the Debtor's rights as a licensee of Playboy under the License Agreement will continue for a short period of time.  The Debtor believes that the extension period provided

**EXHIBIT E - 24**

under the Extension Agreement will be adequate to permit the Debtor (a) to successfully conclude negotiations with Playboy, and (b) to obtain confirmation of a plan of reorganization.

25.      In short, the Extension Agreement maintains the status quo while the Debtor finalizes its negotiations and agreements with Playboy, and seeks approval of the new license agreement, settlement and other terms pursuant to confirmation of a plan of reorganization.

26.    **VI.    PRAYER FOR RELIEF**

WHEREFORE, the Debtor asks that this Court enter an Order:

*A.*      GRANTING the Motion;

*B.*      approving the Extension Agreement;

*C.*      for cause shown, waiving the fourteen-day stay otherwise imposed by Federal Rule Bankruptcy Procedure 6004(h) and/or under any other applicable statute or rule; and

*D.*      granting such other and further relief as the Court deems just and proper.

DATED this 30th day of July, 2012.

PARSONS KINGHORN HARRIS

/s/  Steven C. Strong
Matthew M. Boley
Steven C. Strong
*Attorneys for* debtor-in-possession
PLAY BEVERAGES, LLC

# Exhibit A

**SECOND EXTENSION AGREEMENT**
**(AND RESERVATION OF RIGHTS)**

THIS SECOND EXTENSION AGREEMENT (the "**Extension Agreement**") is made as of the 30th day of July, 2012, by and between PLAY BEVERAGES, LLC, a Delaware limited liability company and debtor-in-possession ("**Licensee**" or the "**Debtor**"), and PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation ("**Licensor**"), each a "**Party**" and collectively the "**Parties**."

R E C I T A L S

WHEREAS, on April 26, 2011 (the "**Petition Date**"), an involuntary petition for relief was filed against the Debtor pursuant to title 11 the United States Code (the "**Code**") in the United States Bankruptcy Court for the District of Utah (the "**Court**"), thereby commencing the bankruptcy case styled In re Play Beverages, LLC, Bankr. No. 11-26046 (the "**Case**"); and

WHEREAS, on August 12, 2011 (the "**Relief Date**"), the Court entered an order for relief in the Case and converted the Case to chapter 11; and

WHEREAS, since the Relief Date, the Debtor has operated its business and managed its property as a debtor-in-possession pursuant to sections 1107 and 1108 of the Code; and

WHEREAS, Licensor and the Debtor are parties to that certain *License Agreement*, dated as of November 1, 2006 (as amended, the "**License Agreement**"); and

WHEREAS, Licensor and the Debtor are parties to that certain *Extension Agreement (and Reservation of Rights)*, dated as of March 22, 2012 (the "**Extension Agreement**"); and

WHEREAS, as modified and/or amended by the Extension Agreement, paragraph S.9 of the Schedule to the License Agreement (the "**Schedule**") provides that the Expiration Date (as defined in the License Agreement) of the License Agreement is: "July 31, 2012; subject to the Renewal Term in Paragraph 1.b(ii) and the termination provisions set forth in the Agreement"; and

WHEREAS, paragraphs 1.b.(ii) and 1.b.(iii) of the License Agreement provide for the possible renewal of the License Agreement for additional five-year renewal terms on the conditions set forth therein; and

WHEREAS, Licensee has filed a proposed chapter 11 plan of reorganization (the "**Plan**") and, subject to the Court's approval of its proposed disclosure statement, anticipates that a hearing on confirmation of the Plan will be heard on or about September 24, 2012; and

WHEREAS, the Debtor and Licensor have engaged in extensive good faith negotiations regarding an agreement pursuant to which Licensor and the Debtor will agree to resolve their disputes, which agreement is subject to several conditions precedent including entry of an order confirming the Debtor's plan (the "**Confirmation Order**"); and

WHEREAS, the Debtor and Licensor have engaged in extensive good faith negotiations regarding a new *License Agreement* (the "**New License Agreement**") with PB Energy Corporation, a newly formed Utah corporation anticipated to be the reorganized debtor under the Plan (the "**New Licensee**"), which agreement will remain subject to conditions precedent including entry of the Confirmation Order; and

WHEREAS, Licensor and the Debtor desire to extend the term of the License under the License Agreement for a short period of time to allow the Debtor to obtain entry of the Confirmation Order and to satisfy the other conditions precedent to the settlement and the New License; and

WHEREAS, the Parties intend to preserve all rights and remedies that each Party may currently have available to it under the License Agreement or otherwise while further negotiations are conducted and/or efforts to satisfy the conditions precedent are completed.

**EXHIBIT E - 27**

## AGREEMENT

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which hereby is acknowledged, the Parties agree as follows:

1.    <u>Extension of Expiration Date</u>.  Paragraph S.9 of the Schedule is hereby modified to provide as follows:

### S.9    THE EXPIRATION DATE

Subject to the Renewal Term in Paragraph 1.b(ii) and the termination provisions set forth in the Agreement, the "Expiration Date" shall be September 30, 2012; *provided, however,* that if an order confirming Licensee's chapter 11 plan of reorganization in Case No. 11-26046 is entered on or before September 30, 2012, then the "Expiration Date" shall be the earlier of (a) the last day preceding the Commencement Date (as defined in the new License Agreement between Licensor and New Licensee), or (b) October 20, 2012.

Except as specifically provided herein, the terms and provisions of the License Agreement shall remain the same and be unaffected by this Extension Agreement.

2.    <u>Termination of Extension Agreement</u>.  This Extension Agreement shall terminate automatically and without further action by either party or the Bankruptcy Court in the event that the $2.0 million escrow contemplated to be paid pursuant to the New License Agreement is not funded (a) within 20 days of signature of the New License Agreement, or (b) within such longer period as Playboy may specify in writing (including by e-mail).  Otherwise, this Extension Agreement shall terminate on the "Expiration Date" as defined under paragraph 1 of this Extension Agreement and paragraph S.9 of the License Agreement as amended hereunder.

3.    <u>Purpose of Extension Agreement</u>.  The sole purpose of this Extension Agreement is to extend the Expiration Date of the License Agreement to allow the Debtor the opportunity to seek entry of the Confirmation Order and to satisfy the other conditions precedent to the New License Agreement and the settlement.  Under no circumstances shall any term of this Extension Agreement be construed (a) as a consent, waiver or release of any kind; (b) to give rise to a claim or defense by reason of estoppel, laches, abandonment, or acquiescence; or (c) to otherwise to affect in any way the rights of the Parties under the License Agreement, under the Code and/or under other applicable law.

4.    <u>No Waiver and Reservation of Rights</u>.  By entering into this Extension Agreement, neither Licensee nor Licensor intends to in any way waive or release any of their respective rights, claims and defenses against the other, and this Extension Agreement shall be construed accordingly.  Licensee and Licensor hereby expressly reserve any and all of their respective rights, claims, and defenses that may be available to Licensee and/or Licensor under the License Agreement, the Code and/or otherwise applicable law.  Accordingly, and without limiting the foregoing:

a.    neither of the Parties intends to, or does, release the other Party (or any third-parties) of or from any claims or liabilities;

b.    this Extension Agreement shall not be construed as Licensor's "written approval for the Agreement to renew" as referenced in Paragraphs 1.b.(ii) and 1.b.(iii) of the License Agreement;

c.    this Extension Agreement is not intended to be, and shall not operate or be construed as, a renewal of the License Agreement, and

d.    this Extension Agreement shall not be construed as consent or agreement by either Party to either the assumption or the rejection of the License Agreement pursuant to section 365 of the Code.

5.    <u>Public Statements</u>.  Any and all public statements, including without limitation court filings, relating to this Extension Agreement and/or the subject matter hereof must be pre-approved in writing by both of the Parties.

6.    <u>Binding Effect; Entire Agreement; Amendment</u>.  This Extension Agreement is binding upon and shall inure to the benefit of the Parties and their respective heirs, successors, assigns, officers, directors, employees, agents, representatives, subrogees and to all persons or entities claiming by, through or under them.  This Extension Agreement represents the entire understanding between the Parties with respect to the subject matter hereof, and supersedes all prior oral or written agreements and understandings relating to the subject matter hereof.  No statement, representation, warranty, covenant or agreement of any kind not expressly set forth in this Extension Agreement shall affect, or be used to interpret, change or restrict, the express terms and provisions of this Extension Agreement.  Neither this Extension Agreement nor

**EXHIBIT E - 28**

any provisions hereof may be changed, discharged or terminated orally, and this Extension Agreement may be modified or amended only by an instrument in writing, signed by all Parties.

7. <u>Governing Law</u>. This Extension Agreement, and the rights and obligations of the Parties hereunder, shall be construed in accordance with and governed by (a) to the extent applicable, federal bankruptcy law, and (b) in all areas not governed by federal bankruptcy law, by the laws of the State of Utah.

8. <u>Authorization</u>. The persons executing this Extension Agreement on behalf of a Party hereby represent and warrant that (subject to Licensee's obligations, if any, under the Code to provide notice and/or to obtain approval by the Court) they are duly authorized and empowered to execute the same, that they have carefully read this Extension Agreement, and that this Extension Agreement represents a binding and enforceable obligation of such Party.

9. <u>Counterparts; Electronically Transmitted Signatures.</u> This Agreement may be executed in counterparts, each of which shall be deemed an original, and all such counterparts shall constitute one and the same Agreement. Signatures transmitted by facsimile and/or e-mail shall have the same force and effect as original signatures.

IN WITNESS WHEREOF, each of the Parties has executed this Extension Agreement as of the date first above written.

**PLAY BEVERAGES, LLC**

By _____
Print Name: *Gil A. Miller*
Print Title: *CRO*

**PLAYBOY ENTERPRISES INTERNATIONAL, INC.**

By _____
Print Name: *Rachel Japa*
Print Title: *EVP, Business Affairs*

{00148081.DOCX / 4 }                                   3

**EXHIBIT E - 29**

**EXHIBIT F**

**The below described is SIGNED.**

(msc)

**Dated: July 31, 2012**

_____
**JOEL T. MARKER**
**U.S. Bankruptcy Judge**

_____

## IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| In re:<br><br>**PLAY BEVERAGES, LLC,**<br><br>Debtor. | Bankruptcy No. 11-26046 JTM<br><br>Chapter 11<br><br>Honorable Joel T. Marker |

## ORDER APPROVING SECOND EXTENSION AGREEMENT
### (AND RESERVATION OF RIGHTS)
### BETWEEN THE DEBTOR AND PLAYBOY

The matter before the Court is the *Ex Parte Motion to Approve Second Extension Agreement (and Reservation of Rights) Between the Debtor and Playboy*, dated July 30, 2012 [Docket No. 281] (the "**Motion**"), filed by debtor-in-possession Play Beverages, LLC (the "**Debtor**").

After reviewing the Motion, the Second Extension Agreement (and Reservation of Rights) (the "Second Extension Agreement") attached as an exhibit to the Motion, and such other matters of record as the Court deemed appropriate, the Court finds and concludes that good cause exists for granting the relief requested in the Motion, and **THE COURT HEREBY ORDERS AS FOLLOWS:**

    1.    the Motion shall be, and hereby is, GRANTED;

    2.    the Second Extension Agreement shall be, and hereby is, APPROVED; and

    3.    to the extent the fourteen-day stay referenced under Federal Rule Bankruptcy Procedure 6004(h) and/or any other similar stay as to the immediate enforceability of an order under another rule or statute otherwise would be applicable, such stay shall be, and hereby is, WAIVED and ordered to be INAPPLICABLE to this Order.

----------------------------------------- END OF ORDER-----------------------------------------

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge S. James Otero and the assigned discovery Magistrate Judge is Charles Eick.

The case number on all documents filed with the Court should read as follows:

## CV12- 10590 SJO (Ex)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge

==============================================

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| [ ] **Western Division** | [ ] **Southern Division** | [ ] **Eastern Division** |
|---|---|---|
| 312 N. Spring St., Rm. G-8 | 411 West Fourth St., Rm. 1-053 | 3470 Twelfth St., Rm. 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701-4516 | Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Venable LLP
Richard J. Frey (SBN 174120)
Tamany Vinson Bentz (SBN 258600)
Melissa C. McLaughlin (SBN 273619)
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9900

ORIGINAL

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware Corporation,<br><br>PLAINTIFF(S)<br><br>v.<br><br>PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah corporation; and CIRTRAN CORPORATION, a Nevada corporation,<br><br>DEFENDANT(S). | CASE NUMBER<br><br>**CV12-10590** SJO(Ex)<br><br><br><br>**SUMMONS** |

TO:    DEFENDANT(S): PLAY BEVERAGES, LLC; CIRTRAN BEVERAGE CORPORATION; and CIRTRAN CORPORATION

     A lawsuit has been filed against you.

     Within   21   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, Richard J. Frey, Venable LLP, whose address is 2049 Century Park East, Suite 2100, Los Angeles, CA 90067    . If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

Dated:    DEC 11 2012

Clerk, U.S. District Court

By: _____
       Deputy Clerk

(Seal of the Court)

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

American LegalNet, Inc.
www.FormsWorkFlow.com

Venable LLP
Richard J. Frey (SBN 174120)
Tamany Vinson Bentz (SBN 258600)
Melissa C. McLaughlin (SBN 273619)
2049 Century Park East, Suite 2100
Los Angeles, CA 90067
Telephone: (310) 229-9900
Facsimile: (310) 229-9900

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware Corporation, <br><br> PLAINTIFF(S) <br><br> v. <br><br> PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah corporation; and CIRTRAN CORPORATION, a Nevada corporation, <br><br> DEFENDANT(S). | **CASE NUMBER** <br><br> **CV12-10590** (SJO(Ex)) <br><br><br> **SUMMONS** |

TO:   DEFENDANT(S): PLAY BEVERAGES, LLC; CIRTRAN BEVERAGE CORPORATION; and
CIRTRAN CORPORATION

    A lawsuit has been filed against you.

    Within   _21_   days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff's attorney, _Richard J. Frey, Venable LLP_, whose address is _2049 Century Park East, Suite 2100, Los Angeles, CA 90067_ .   If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

              DEC 1 1 2012

Dated: _____

Clerk, U.S. District Court

**JULIE PRADO**

By: _____
           Deputy Clerk

*(Seal of the Court)*

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States. Allowed 60 days by Rule 12(a)(3)].*

---

CV-01A (10/11)                                **SUMMONS**


American LegalNet, Inc.
www.FormsWorkFlow.com

COPY

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| Playboy Enterprises International, Inc. | Play Beverages, LLC; CirTran Beverage Corporation; CirTran Corporation |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Venable LLP<br>Richard J. Frey (SBN 174120); Tamany Vinson Bentz (SBN 258600)<br>Melissa C. McLaughlin (SBN 273619)<br>2049 Century Park East, Suite 2100, Los Angeles, CA 90067<br>(310) 229-9900 | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff

☒ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant

☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from another district (specify):  ☐ 6 Multi-District Litigation  ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT: JURY DEMAND:** ☐ Yes ☒ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☐ Yes ☒ No   ☐ **MONEY DEMANDED IN COMPLAINT: $** _____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Trademark infringement, false advertising, and cybersquatting under 15 U.S.C. §§ 1114, 1125(a), and 1125(d)

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty | ☐ 740 Railway Labor Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 540 Mandamus/ Other | ☐ 790 Other Labor Litigation |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 22 Appeal 28 USC 158 | ☐ 550 Civil Rights | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | ☐ 555 Prison Condition | **PROPERTY RIGHTS** |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | **FORFEITURE / PENALTY** | ☐ 820 Copyrights |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 610 Agriculture | ☐ 830 Patent |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 620 Other Food & Drug | ☒ 840 Trademark |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | ☐ 625 Drug Related Seizure of Property 21 USC 881 | **SOCIAL SECURITY** |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | ☐ 61 HIA(1395ff) |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities – Employment | ☐ 640 R.R. & Truck | ☐ 862 Black Lung (923) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **REAL PROPERTY** | ☐ 446 American with Disabilities – Other | ☐ 650 Airline Regs | ☐ 863 DIWC/DIWW 405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 210 Land Condemnation | **IMMIGRATION** | ☐ 660 Occupational Safety /Health | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 220 Foreclosure | ☐ 462 Naturalization Application | ☐ 690 Other | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 230 Rent Lease & Ejectment | ☐ 463 Habeas Corpus-Alien Detainee | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment | ☐ 240 Torts to Land | ☐ 465 Other Immigration Actions | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 240 Torts to Land | ☐ 245 Tort Product Liability | | | ☐ 871 IRS-Third Party 26 USC 7609 |
| | ☐ 245 Tort Product Liability | ☐ 290 All Other Real Property | | | |
| | ☐ 290 All Other Real Property | | | | |

CV12-10590

**FOR OFFICE USE ONLY:** Case Number: _____

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

| CV-71 (05/08) | CIVIL COVER SHEET | | Page 1 of |
|---|---|---|---|
| | | American LegalNet, Inc.<br>www.FormsWorkflow.com | |

# UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
## CIVIL COVER SHEET

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed?  ☒ No ☐ Yes

If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case?  ☒ No ☐ Yes

If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or

☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or

☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or

☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.

☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.

☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | Delaware; Nevada; Utah |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.

**Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| Los Angeles | |

***** Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties

Note: In land condemnation cases, use the location of the tract of land involved

**X. SIGNATURE OF ATTORNEY (OR PRO PER):** _~signature~_      Date  December 10, 2012

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3 -1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |

American LegalNet, Inc.
www.FormsWorkflow.com