COPY

VENABLE LLP
Richard J. Frey (SBN 174120)
Tamany Vinson Bentz (SBN 258600)
Melissa C. McLaughlin (SBN 273619)
Email:     rjfrey@venable.com
           tjbentz@venable.com
           mcmclaughlin@venable.com
2049 Century Park East, Suite 2100
Los Angeles, CA  90067
Telephone:   (310) 229-9900
Facsimile:   (310) 229-9901

VENABLE LLP
Marcella Ballard (*Pro Hac Vice* Application Forthcoming)
Email:    mballard@venable.com
1270 Avenue of the Americas, 25th Floor
New York, NY 10020
Telephone:  (212) 307-5500
Facsimile:  (212) 307-5598

Attorneys for Plaintiff Playboy Enterprises
International, Inc.

# UNITED STATES DISTRICT COURT

## FOR THE CENTRAL DISTRICT OF CALIFORNIA

### WESTERN DIVISION

CV12-10590 SJO(Ex)

| | |
|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>PLAY BEVERAGES, LLC, a Delaware limited liability company; CIRTRAN BEVERAGE CORPORATION, a Utah corporation; and CIRTRAN CORPORATION, a Nevada corporation,<br><br>Defendants. | CASE NO.<br><br>Hon. S. James Otero<br>Courtroom 1<br><br>**NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date: January 14, 2013<br>Time: 10:00 am |

MOTION FOR PRELIMINARY INJUNCTION

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on _January 14, 2013_ ,

at _10:00_ a.m., or as soon as thereafter as counsel may be heard, in Courtroom _1_ , before the Hon. _S. James Otero_ , in the above-entitled Court, 312 North Spring Street, Los Angeles, California 90012, Plaintiff Playboy Enterprises International, Inc. ("Playboy") will, and hereby does, move for a preliminary injunction to enjoin Defendants Play Beverages, LLC, CirTran Beverage Corporation, and CirTran Corporation (collectively, "Defendants"), and their affiliates, subsidiaries, parents, and their respective officers, agents, servants, attorneys, and employees, and all persons in active concert or participation with them anywhere in the world, from:

1.     Using, in whole or in part, the PLAYBOY designation or Rabbit Head Design (the "Playboy Marks") or any confusingly similar designations;

2.     Manufacturing, advertising, promoting, distributing, making, purchasing, offering for sale or selling any goods or services, including Playboy Energy Drink, containing the Playboy Marks or any confusingly similar designations;

3.     Doing any act or thing that is likely to cause the consuming public to believe that Defendants' goods or services are authorized by Playboy or in some way connected with Playboy and/or Playboy's business, or that is likely to injure or damage Playboy or the Playboy Marks;

4.     In any way infringing or damaging the Playboy Marks; and

5.     Attempting, causing, or assisting any of the above-described acts, including but not limited to enabling others to conduct the scheme described above, or by passing along information to others to allow them to manufacture, advertise, promote, distribute, make, purchase, offer for sale or sell any goods or services containing the Playboy Marks or any confusingly similar

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

1   designations;

2         6.     Otherwise competing unfairly with Playboy in any manner.

3

4       This Motion is made on the grounds that:

5

6         1.     Playboy is the owner of the registered trademarks PLAYBOY, which

7   is the subject of United States Certificate of Registration No. 3,496,428 filed

8   November 14, 2006, and the Rabbit Head Design, which is the subject of

9   United States Certificate of Registration No. 3,496,429, filed November 14, 2006;

10         2.     Defendants have continuously used the Playboy Marks without

11   authorization since August 28, 2012 when Play Beverages, LLC's license

12   agreement with Playboy expired (even using an alternative expiration date of

13   September 30, 2012, Defendants have continuously used the Playboy Marks since

14   that date);

15         3.     Defendants conduct business in the State of California and throughout

16   the United States and are currently using the Playboy Marks in their advertisement,

17   promotion, distribution, and/or sales of the Playboy Energy Drink, all of which

18   is creating a likelihood of confusion and is causing irreparable harm to Playboy;

19   and

20         4.     Unless Defendants are enjoined during the pendency of this action,

21   Playboy shall continue to suffer irreparable injury as a result of the continued

22   likelihood of confusion caused by the actions of the Defendants.

23

24       This Motion is made upon this Notice of Motion, Motion, Memorandum of

25   Points and Authorities, the accompanying Request for Judicial Notice, and exhibits

26   thereto, Declarations of Christine Coffelt and Melissa C. McLaughlin and exhibits

27   thereto, as well as all other pleadings, records, and papers filed in this action and

28   such other and further evidence as may be presented to the Court at the hearing on

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1    this Motion.

2           Respectfully submitted,

3

4    Dated: December 10, 2012          VENABLE LLP

5

6                                      By: _____

7                                      Richard J. Frey
                                       Tamany Vinson Bentz
8                                      Melissa C. McLaughlin
                                       Attorneys for Plaintiff Playboy
9                                      Enterprises International, Inc.

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION .............................................................................1

II.  STATEMENT OF FACTS ................................................................2

    A.   PLAYBOY AND THE PLAYBOY BRAND ...............................2

    B.   THE INFRINGED TRADEMARKS.............................................2

    C.   PLAYBEV, CBC, AND CIRTRAN............................................3

    D.   DEFENDANTS' CONTINUED USE OF THE PLAYBOY MARKS ...............5

III. STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF ........................7

IV.  ARGUMENT ...................................................................................7

    A.   Playboy Is Likely To Succeed On the Merits of its Claim ...................7

        1.   The Playboy Marks are Valid and Protectable Marks .............................8

        2.   Defendants' Unauthorized Use Of the Playboy Marks Is Likely To Cause Confusion ...................9

    B.   Playboy will Suffer Irreparable Harm From Defendants' use of the Playboy Marks ...................12

    C.   The Balance Of Hardships Weighs Strongly In Favor of Playboy ...................13

    D.   Defendants' Use of the Playboy Marks Should be Enjoined to Protect the Public ...................14

V.   CONCLUSION...............................................................................14

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*7-Eleven, Inc. v. Dhaliwal*, 12-CV-02276-KJM-GGH, 2012 WL 5880462 (E.D. Cal. Nov. 21, 2012) ...................................................................................................................7

*AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979)........................................11

*Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006).......10

*Burger King Corp. v. Mason*, 710 F.2d 1480, 1492-93 (11th Cir. 1983) ....................................9

*Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, CIV. 2:10-2751, 2011 WL 221651, at *13 (E.D. Cal. Jan. 24, 2011)...............................................................................12

*E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) ......................11

*Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 614 (C.D. Cal. 1996)............................................................................................7, 9, 12

*Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008)............................................11

*KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005) .............................................................................................................................8

*Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) .............................................................................................................................7

*Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)...................................11

*Maxim Integrated Products Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009) ...........................................................................................................................12

*Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) 11, 14

*Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ..................................11

*Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009, 1013 n.4 (C.D. Cal. 1996) ...................9, 14

*Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d 781, 798 (W.D. Tex. 2009) .............................................................................................................7

*Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813-14 (7th Cir. 2002) ......................14

*Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008)..........10

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004) .................................12

*Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S. Ct. 2753, 2757 (1992)..........8

V E N A B L E   L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

*U.S. Olympic Comm. v. Xclusive Leisure & Hospitality Ltd.*, No. C 08-03514 JSW, 2008
     WL 3971120, at *10 (N.D. Cal. Aug. 25, 2008).................................................9, 14

*Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011)....................12

*Xen, Inc. v. Citrix Systems, Inc.*, No. CV 11–09568 DDP (MRWx), 2012 WL 5289609, at
     *3 (C.D. Cal. Oct. 25, 2012) ...........................................................................10

**Statutes**

15 U.S.C. § 1115 .........................................................................................8

**Treatises**

2 McCarthy on Trademarks and Unfair Competition § 11:11 (4th ed.) ........................................8

Rest. (3d) Unfair Competition § 35, cmt. h (1995).......................................................7

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VENABLE LLP**
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

iii

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Playboy Enterprises International, Inc. ("Playboy") is a highly recognizable and popular entertainment and lifestyle company.  The name "Playboy" and the iconic Rabbit Head Design have been used by Playboy for decades as the company has invested significant resources to build its brand and expand its licensing initiatives.  In furtherance of its brand development and licensing, Playboy owns hundreds of federally registered trademarks, including the two federally registered trademarks for PLAYBOY and the Rabbit Head Design at issue in this lawsuit (the "Playboy Marks").   The Playboy brand has over 50 years of global brand recognition, providing instant credibility and recognition for its licensees.

Defendants CirTran Corporation ("CirTran") and its subsidiaries and affiliates Play Beverages, LLC ("PlayBev") and CirTran Beverage Corporation ("CBC") (collectively, "Defendants") are infringing the Playboy Marks through their unauthorized use of the marks in advertising, marketing, promoting, distributing, and selling Playboy Energy Drink.

PlayBev is a former licensee of Playboy whose license agreement has expired.  PlayBev also sought and obtained a court order from the United States Bankruptcy Court for the District of Utah (while PlayBev was a debtor in possession subject to the jurisdiction of that court) approving a Playboy/PlayBev stipulation that specified an expiration date for the license agreement.   That expiration date passed several months ago.  In addition, Playboy has repeatedly advised Defendants of the expiration of the license agreement.  Thus, Defendants are well aware that the license has expired.

Nonetheless, Defendants continue using the Playboy Marks in connection with Playboy Energy Drink, even affirmatively asserting months after the expiration that they will keep manufacturing, marketing, and selling Playboy Energy Drink using the Playboy Marks.  Defendants' infringing conduct will

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

1

1 create confusion among consumers and within the trade and will hinder Playboy's
2 ability to control the quality of its trademarks, its goodwill on the Playboy Marks,
3 and its reputation, causing irreparable harm.

4      Playboy seeks preliminary injunctive relief to protect its long-established
5 brand from further irreparable harm and infringement and to protect the public
6 from ongoing confusion, pending a trial on the merits.

7 **II.     STATEMENT OF FACTS**
8      **A.     PLAYBOY AND THE PLAYBOY BRAND**

9      Playboy is one of the most recognized and popular consumer brands in the
10 world.    (Declaration of Christine Coffelt [hereinafter "Coffelt Decl."] ¶ 2).
11 Playboy is a media and lifestyle company that markets the brand through a wide
12 range of media properties and licensing initiatives. (*Id.*).  The company publishes
13 *Playboy* magazine in the United States and abroad and creates content for
14 distribution via television networks, websites, mobile platforms and radio.  (*Id.*).
15 Through licensing agreements, the Playboy brand appears on a wide range of
16 consumer products in more than 150 countries as well as retail stores and
17 entertainment venues. (*Id.*).

18      Through Playboy's extensive marketing efforts, media projects, and product
19 licensing initiatives, Playboy built substantial consumer good will associated with
20 the Playboy Marks.  (*Id.* ¶ 6).  Playboy's brand recognition and the hundreds of
21 trademarks that it owns are its most valuable assets. (*Id.* ¶ 8).

22      **B.     THE INFRINGED TRADEMARKS**

23      Playboy owns over 250 federally registered trademarks.   These include
24 registrations for the Playboy Marks in several categories, including Class 32, the
25 category covering energy drinks, as follows. (*Id.* ¶ 3, Ex. A).

26
27
28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

2

6266826-v10

| MARK | FILING DATE | DATE OF FIRST USE IN COMMERCE | REGISTRATION NUMBER |
|---|---|---|---|
| PLAYBOY | 11/14/2006 | 4/1/2008 | 3,496,428 |
| Rabbit Head Design | 11/14/2006 | 4/1/2008 | 3,496,429 |

The Playboy Marks (as used in Class 32) have been in continuous use since 2008, and the designation PLAYBOY and the Rabbit Head Design have been in continuous use by Playboy with respect to other categories of goods and services for decades. (*Id.* ¶ 4).

Each year, Playboy spends millions of dollars advertising, promoting, developing, and protecting its trademarks, including the Playboy Marks, which are central to Playboy's success and the success of its United States and worldwide licensees. (*Id.* ¶ 5).

Playboy uses or licenses others to use the Playboy Marks to promote the Playboy brand and to market, advertise, and sell consumer goods and services. Playboy's robust licensing program includes licensing in the category of beverages in general and energy drinks specifically. (*Id.* ¶ 7).

C.   **PLAYBEV, CBC, AND CIRTRAN**

PlayBev is a former licensee of Playboy. (*Id.* ¶ 9). In 2006, PlayBev and Playboy entered into a license agreement, under which PlayBev had the limited right to manufacture and sell certain non-alcoholic beverages, including Playboy-branded energy drinks (the "License Agreement"). (*Id.*). According to publicly available information, CBC was formed by CirTran, its parent company, for the purpose of manufacturing and distributing Playboy Energy Drink for PlayBev. (Declaration of Melissa C. McLaughlin [hereinafter "McLaughlin Decl."] ¶¶ 2-3,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

3

6266826-v10

1   Exs. A-B).

2   On April 26, 2011, a petition was filed by several creditors of PlayBev

3   commencing a Chapter 7 bankruptcy proceeding against PlayBev as an involuntary

4   debtor in the United States Bankruptcy Court for the District of Utah (the

5   "Bankruptcy Court").  (Request for Judicial Notice [hereinafter "RJN"], Ex. A).

6   Shortly thereafter, PlayBev obtained an order converting the proceeding to a

7   voluntary bankruptcy under Chapter 11.  (*Id.*, Ex. B).  By its terms, the License

8   Agreement was due to expire on March 31, 2012.  As the time approached for the

9   expiration of the License Agreement, in light of negotiations then occurring in the

10   bankruptcy proceeding, Playboy and PlayBev entered into a written agreement to

11   extend the expiration date of the License Agreement to July 31, 2012.  (*Id.*, Ex.

12   C).  PlayBev sought and obtained an order from the Bankruptcy Court approving

13   the parties' agreement to extend the expiration date of the License Agreement.

14   (*Id.*, Ex. D).

15   In July of 2012, Playboy and PlayBev entered into a second extension

16   agreement, which was also approved by the Bankruptcy Court (the "Second

17   Extension Agreement").  (*Id.*, Exs. E & F).  The Second Extension Agreement set

18   forth three alternative expiration dates for the License Agreement, depending on

19   the circumstances.  (*Id.*, Ex. E).  First, it specified that the License Agreement

20   would expire on September 30, 2012.  (*Id.*, Ex. E).  Second, it provided an

21   alternative expiration date for the License Agreement if PlayBev obtained an order

22   confirming its chapter 11 plan of reorganization by September 30, 2012.  (*Id.*, Ex.

23   E).  Third, it provided that it would "terminate automatically and without further

24   action by either party or the Bankruptcy Court" if PlayBev's proposed reorganized

25   debtor did not make a mandatory $2 million payment into escrow for the benefit of

26   Playboy within a specified time-frame.  (*Id.*, Ex. E).

27   All expiration dates in the Second Extension Agreement have passed: (i)

28   PlayBev's proposed reorganized debtor did not make the mandatory $2 million

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

4

escrow payment; (ii) PlayBev cancelled its confirmation hearing and therefore did not obtain confirmation of its chapter 11 plan of reorganization; and (iii) the expiration date of September 30, 2012 also has passed. (*See* Coffelt Decl. ¶ 10; RJN, Ex. G).

The Bankruptcy Court dismissed PlayBev's case on December 7, 2012 and lifted the automatic stay. (RJN, Ex. H).

### D.   DEFENDANTS' CONTINUED USE OF THE PLAYBOY MARKS

Since all possible expiration dates set forth in the Second Extension Agreement have since passed, the License Agreement has expired. As such, PlayBev is not currently authorized to use the Playboy Marks. (Coffelt Decl. ¶ 11). CirTran and CBC, who had derived all rights from PlayBev with respect to the use of the Playboy Marks, likewise have no right to use the Playboy Marks. (*See id.*).

Defendants, however, have continued to use the Playboy Marks in their advertisement, promotion, distribution, and sales of Playboy Energy Drink. Defendants advertise and promote Playboy Energy Drink through their websites www.playbev.com/usa, and www.cirtran.com (which are accessible in California). (McLaughlin Decl. ¶¶ 5-7, Exs. D-F). The Playboy Marks are also prominently displayed on the above-named websites and on Playboy Energy Drink itself, which continues to be advertised, promoted, and distributed. (McLaughlin Decl. ¶¶ 6-7, Exs. E-F; Coffelt Decl. ¶ 12).

Moreover, Defendants unequivocally tout and capitalize upon the value of the Playboy brand and the Playboy Marks in connection with Playboy Energy Drink, despite the fact that they have no authorization whatsoever to do so. PlayBev states in promotional materials that:

- "Playboy has over 54 years of global brand recognition;"
- "Playboy is one of the most recognized brands in the world;"
- "Playboy is a lifestyle brand that appeals to men and women;" and

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

5

6266826-v10

- "Playboy Energy Drink is an aspirational brand that will increase sales and drive profitability." (McLaughlin Decl. ¶ 8, Ex. G).

CirTran also states, quoting PlayBev, that:

- "[t]he Playboy Rabbit Head Icon is among the most recognized brand icons globally, and affords us instant recognition and credibility in this dynamic category – all of which will ultimately translate to trial and repeat purchases;" and

- "Playboy Energy Drink was created to give consumers a taste of the lifestyle that has always been associated with the Playboy brand." (*Id.* ¶ 9, Ex. H).

In its public filings, CirTran has reported sales attributed to CBC's manufacturing, marketing, and distribution of Playboy Energy Drink as follows:

- $2,943,921 (beverage distribution sales in 2011);

- $7,712,492 (beverage distribution sales in 2010);

- $772,816 (revenue for sales of Playboy Energy Drink in North America in 2011);

- $2,061,893 (revenue for sales of Playboy Energy Drink in North America in 2010);

- $1,482,780 (beverage distribution sales to external customers in the nine months ending September 30, 2012).

(McLaughlin Decl. ¶¶ 3-4, Exs. B &C).  As Playboy Energy Drink is sold in California, a segment of these reported sales have occurred in California.  (*See* Coffelt Decl. ¶ 12).

Finally, Defendants state on www.playbev.com that PlayBev is an official licensee of Playboy and that PlayBev's use of the word "Playboy" and the Rabbit Head Design is under license. (McLaughlin Decl. ¶ 10, Ex. I).  However, these statements are not true, as the License Agreement has expired and Playboy has advised Defendants of this fact.

6

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

6266826-v10

1    Since the License Agreement has expired, Playboy's ability to further
2    develop and use this category of goods (i.e., non-alcoholic beverages, including
3    energy drinks) is hampered by Defendants unauthorized use of the category.
4    (Coffelt Decl. ¶ 13).

5    ## III.   STANDARD FOR PRELIMINARY INJUNCTIVE RELIEF

6    Under these circumstances where the defendant is a holdover licensee,
7    preliminary injunctions are customarily granted to protect valuable brands from the
8    ongoing irreparable injury that naturally results from the harmful activities. *See*
9    *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612,
10   615 (C.D. Cal. 1996) ("In a licensor/licensee case, the reasons for issuing a
11   preliminary injunction for trademark infringement are even more compelling than
12   in the ordinary case."); *7-Eleven, Inc. v. Dhaliwal*, 12-CV-02276-KJM-GGH, 2012
13   WL 5880462 (E.D. Cal. Nov. 21, 2012) (granting preliminary injunction to
14   franchisor); *Petro Franchise Sys., LLC v. All Am. Properties, Inc.*, 607 F. Supp. 2d
15   781, 798 (W.D. Tex. 2009) ("[P]reliminary injunctions are routinely granted to
16   prevent ongoing use of a trademark [when the agreement between the parties is
17   over].");  *cf.* Rest. (3d) Unfair Competition § 35, cmt. h (1995) ("Absent special
18   circumstances, courts will ordinarily grant a preliminary injunction in a trademark
19   infringement action if there is strong evidence of a likelihood of confusion.")

20   "A plaintiff seeking a preliminary injunction must establish that [it] is likely
21   to succeed on the merits, that [it] is likely to suffer irreparable harm in the absence
22   of preliminary relief, that the balance of equities tips in [its] favor, and that an
23   injunction is in the public interest." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma*
24   *GmbH & Co.*, 571 F.3d 873, 877 (9th Cir. 2009) (internal quotation omitted).

25   ## IV.   ARGUMENT

26   ### A.   Playboy Is Likely To Succeed On the Merits of its Claim

27   To prevail on its Lanham Act trademark claim Playboy must establish that
28   the Playboy Marks are valid and that Defendants' use of the Playboy Marks is

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

7

1  likely to cause confusion, mistake or deception.  *KP Permanent Make-Up, Inc. v.*
2  *Lasting Impression I, Inc.*, 408 F.3d 596, 602 (9th Cir. 2005).  Both elements are
3  satisfied here.

### 1.    The Playboy Marks are Valid and Protectable Marks

5      The Playboy Marks are valid and protectable marks.  The marks are valid as
6  evidenced by Playboy's trademark registrations.  (*See* Coffelt Decl. ¶ 3, Ex. A).
7  Under federal law, trademark registrations "shall be prima facie evidence of the
8  validity of the registered mark . . . and of the registrant's exclusive right to use the
9  registered mark in commerce on or in connection with the goods and services
10  specified in the registration . . . ."  15 U.S.C. § 1115(a).  It is undisputed that
11  Playboy owns federal trademark registrations for the Playboy Marks, which
12  constitute *prima facie* evidence of Playboy's rights.  Playboy has spent millions of
13  dollars advertising, promoting, developing, and protecting the Playboy Marks,
14  which are crucial to Playboy's success and the success of its United States and
15  worldwide licensees.  (Coffelt Decl. ¶ 5).  Defendants' clearly state on their
16  website www.playbev.com/usa that the Playboy Marks are owned by Playboy.
17  (McLaughlin Decl. ¶ 10, Ex. I).

18      The Playboy Marks are protectable because they are inherently distinctive.
19  The designation PLAYBOY and the Rabbit Head Design are arbitrary marks that
20  do not suggest or describe any ingredient, quality, or characteristic of the goods
21  with which they are used – namely, energy drinks.  *See* 2 McCarthy on Trademarks
22  and Unfair Competition § 11:11 (4th ed.)  ("Arbitrary marks comprise those words,
23  symbols, pictures, etc., that are in common linguistic use but which, when used
24  with the goods or services in issue, neither suggest nor describe any ingredient,
25  quality or characteristic of those goods or services.").  Rather, the Playboy Marks
26  identify the source of a product.  *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S.
27  763, 768, 112 S. Ct. 2753, 2757 (1992) (Suggestive, arbitrary and fanciful marks,
28  "because their intrinsic nature serves to identify a particular source of a product,

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

8

6266826-v10

1   are deemed inherently distinctive and are entitled to protection.").

2       **2.    Defendants' Unauthorized Use Of the Playboy Marks Is**

3             **Likely To Cause Confusion**

4       Defendants' use of the Playboy Marks confuses consumers and leads them

5   to believe there is still an affiliation between Playboy and Defendants when there

6   no longer is any such affiliation or authorization.[1] Indeed, Defendants explicitly

7   represent on www.playbev.com that PlayBev is "an official licensee of Playboy

8   Enterprises International, Inc." (McLaughlin Decl. ¶ 10, Ex. I).

9       Where, as here, a former licensee continues to use the licensor's trademark

10  without authorization, this continued use establishes a likelihood of confusion.

11  *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612,

12  614 (C.D. Cal. 1996) ("Hollywood's ownership of the Marks is not disputed.

13  Likewise, the issue of 'likelihood of confusion' is not disputed because GHAC, as

14  a licensee of the Marks, is using the identical Marks. Therefore, unless GHAC is

15  authorized to use the Marks, it is violating Hollywood's rights as the registered

16  owner of the Marks."); *Paisa, Inc. v. N & G Auto, Inc.*, 928 F. Supp. 1009, 1013

17  n.4 (C.D. Cal. 1996) ("In this case, the marks are not merely similar, but identical.

18  Defendant continues to use Paisa's mark without authorization and to provide

19  goods and services as if it were still a licensed franchisee. Under the

20  circumstances, a likelihood that the public will confuse Defendant with a licensed

21  Purrfect Auto Service shop clearly exists."); *Burger King Corp. v. Mason*, 710

22  F.2d 1480, 1492-93 (11th Cir. 1983) ("Common sense compels the conclusion that

23

24  [1] Defendants are using the Playboy Marks in commerce and representing that PlayBev is Playboy's licensee, which leads to confusion. Despite the expiration of the Playboy/PlayBev license, Defendants still use the Playboy Marks extensively to advertise, market, and promote

25  Playboy Energy Drink on websites that they either own or operate. *See U.S. Olympic Comm. v. Xclusive Leisure & Hospitality Ltd.*, No. C 08-03514 JSW, 2008 WL 3971120, at *5 (N.D. Cal.

26  Aug. 25, 2008), *as amended* Feb. 19, 2009 (Defendants used the trademarks in commerce by "making unauthorized use of Plaintiffs' marks on their Websites."). Plus, the product itself –

27  Playboy Energy Drink – contains the Playboy Marks in its name and on its packaging.

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

9

a strong risk of consumer confusion arises when a terminated franchisee continues to use the former franchisor's trademarks. . . . Because of this risk, many courts have held that continued trademark use by one whose trademark license has been cancelled satisfies the likelihood of confusion test and constitutes trademark infringement.").

Defendants' continued use of the Playboy Marks after the expiration of the License Agreement establishes a likelihood of confusion. When consumers see the word "Playboy" and the Rabbit Head Design on Playboy Energy Drink, they will automatically think that the product comes from Playboy itself or is sponsored by or affiliated with Playboy. Furthermore, consumers who visit PlayBev's website will believe PlayBev's statement that it is an official licensee of Playboy. Since the License Agreement is over, this is clearly not the case.

In this context, a court does not need to evaluate the likelihood of confusion factors set forth in *AMF, Inc. v. Sleekcraft Boats*, because "where a licensee persists in the unauthorized use of a licensor's trademark, . . . the continued use alone establishes a likelihood of consumer confusion." *Robert Trent Jones II, Inc. v. GFSI, Inc.*, 537 F. Supp. 2d 1061, 1065 (N.D. Cal. 2008) (citations and quotations omitted). Even if this Court were to consider the *Sleekcraft* factors, those also point to a likelihood of confusion. For example:

- The Playboy Marks are strong because of their federal registration and inherent distinctiveness. *See, e.g., Xen, Inc. v. Citrix Systems, Inc.*, No. CV 11–09568 DDP (MRWx), 2012 WL 5289609, at *3 (C.D. Cal. Oct. 25, 2012).

- Defendants are using Playboy's exact trademarks. *See Au-Tomotive Gold, Inc. v. Volkswagen of Am., Inc.*, 457 F.3d 1062, 1076 (9th Cir. 2006) (case presented an "easy analysis in terms of likelihood of confusion" in part because exact marks were being used). Defendants' use of the Playboy Marks is intentional and aims to

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

10

6266826-v10

capitalize on Playboy's goodwill.  *See Official Airline Guides, Inc. v. Goss*, 6 F.3d 1385, 1394 (9th Cir. 1993) ("When an alleged infringer knowingly adopts a mark similar to another's, courts will presume an intent to deceive the public.").

- Playboy intends to further develop and use this category of goods (i.e., non-alcoholic beverages, including energy drinks), but its ability to do so is hampered by Defendants unauthorized use of the category.  *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1293 (9th Cir. 1992) (expansion of product lines factor met when defendant used trademark in connection with cheese products and winery trademark owner had already started expanding into retail cheese market ).

- And Playboy Energy Drink is an inexpensive good such that consumers are likely to exercise only minimal care when purchasing it.  *Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1280 (C.D. Cal. 2008) ("Courts have found that the ordinary purchaser presumably takes more care in purchasing 'expensive' items that she buys infrequently, than in buying everyday, relatively inexpensive items.").

*See Jada Toys, Inc. v. Mattel, Inc.*, 518 F.3d 628, 632 (9th Cir. 2008) (summarizing *Sleekcraft* factors as: "(1) strength of the mark; (2) proximity of the goods; (3) similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) type of goods and the degree of care likely to be exercised by the purchaser; (7) defendant's intent in selecting the mark; and (8) likelihood of expansion of the product lines") (citing *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348-49 (9th Cir. 1979), *abrogated in part on other grounds as recognized in Mattel, Inc. v. Walking Mountain Prods.*, 353 F.3d 792 (9th Cir. 2003)).

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

11

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10

**B.     Playboy will Suffer Irreparable Harm From Defendants' use of the Playboy Marks**

Defendants' use of the Playboy Marks irreparably harms Playboy because it obliterates Playboy's control over the Playboy Marks and the value of its brand. Irreparable injury exists where a court may reasonably conclude that continuing trademark infringement will result in the plaintiff's loss of control over its reputation and good will. *Maxim Integrated Products Inc. v. Quintana*, 654 F. Supp. 2d 1024, 1035-36 (N.D. Cal. 2009); *see also Century 21 Real Estate LLC v. All Prof'l Realty, Inc.*, CIV. 2:10-2751, 2011 WL 221651, at *13 (E.D. Cal. Jan. 24, 2011) ("[I]ntangible injuries that are incapable of measurement, like reputation, recruiting efforts, and goodwill, may constitute irreparable harm.").

Here, Defendants continue to use the Playboy Marks even though they know they have no authority to do so.  PlayBev is a former licensee, and courts have held that when a former licensee engages in unauthorized use of the trademarks it irreparably harms the marks' owner. *Wetzel's Pretzels, LLC v. Johnson*, 797 F. Supp. 2d 1020, 1028 (C.D. Cal. 2011) ("[U]nless Plaintiff is allowed to protect its marks, its ability to control its reputation and goodwill associated with the marks will be significantly reduced."); *Hollywood Athletic Club Licensing Corp. v. GHAC-CityWalk*, 938 F. Supp. 612, 615 (C.D. Cal. 1996) ("In a licensor/licensee case, the reasons for issuing a preliminary injunction for trademark infringement are even more compelling than in the ordinary case. The licensor has a strong need to control the use of its mark both to preserve the quality of the mark and to maintain the rights to the mark, for a licensor who fails to monitor its mark risks a later determination that the mark has been abandoned. The licensor need not prove that the unauthorized licensee is damaging the licensor's reputation, but need only show that it has lost control over its reputation, which 'is the very thing that constitutes irreparable harm in the licensing context.'") (internal citations omitted); *see also Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 25 (2d Cir. 2004)

V E N A B L E  L L P
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

12

6266826-v10

1    ("There is a compelling need for injunctive relief especially when the case involves
2    a former licensee because, after a license has been revoked, there is an increased
3    danger that consumers will be confused and believe that the former licensee is still
4    an authorized representative of the trademark holder.").

5        In this case, Defendants' infringing conduct is depriving Playboy of the
6    absolute right to control the quality of the Playboy Marks.  Playboy has spent many
7    years building up enormous goodwill and value associated with the Playboy
8    Marks, which Defendants are now jeopardizing.   Playboy cannot control this
9    goodwill while Defendants continue infringing upon the Playboy Marks.

10       In addition, Defendants' infringement is damaging Playboy's reputation as a
11   company.  Defendants' blatantly infringing conduct conveys to the public and to
12   the marketplace that Playboy's intellectual property can be taken advantage of and
13   that its valuable brand can be used in an manner that is detriment to its business
14   interests.   This damage to Playboy's reputation will not only affect the Playboy
15   Marks in this specific category, but will affect the brand as a whole, across all
16   licensing categories.

17       Finally, Defendants' infringement is irreparably harming the energy drink
18   category itself.   Defendants' actions are tarnishing the category because they
19   continue to represent their use of the Playboy Marks as authorized by Playboy,
20   when that is not the case.  As long as Defendants' infringement causes confusion,
21   Playboy is hindered in its ability to control the use of its intellectual property in,
22   and to capitalize on, this licensing category.

23       An injunction is the only adequate remedy to prevent continued irreparable
24   injury to Playboy.

25   **C.   The Balance Of Hardships Weighs Strongly In Favor of Playboy**
26       Playboy has and will continue to invest substantial time and resources in the
27   development of its brand and reputation, including its trademarks.  The substantial
28   and irreparable harm that Playboy will continue to suffer due to Defendants'

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

13

6266826-v10

infringement outweighs any harm that Defendants may suffer if they are prevented from continuing their infringement.  Defendants' use of the exact Playboy Marks is intentional, even though Defendants know the License Agreement has expired. When infringement is intentional, "even if the defendant's entire business was built upon the infringing mark, the balance of hardships weighs in favor of the plaintiff." *U.S. Olympic Comm. v. Xclusive Leisure & Hospitality Ltd.*, No. C 08-03514 JSW, 2008 WL 3971120, at *10 (N.D. Cal. Aug. 25, 2008), *as amended* Feb. 19, 2009.

The injunction sought by Playboy will not prevent Defendants from selling an energy drink or any other product – it will just prevent Defendants from unfairly using the Playboy Marks to do so.

### D.    Defendants' Use of the Playboy Marks Should be Enjoined to Protect the Public

It is in the public interest to prevent the confusion and deception resulting from Defendants' infringing use of the Playboy Marks.  In trademark infringement actions, an injunction serves the public interest by preventing consumer confusion. *See Moroccanoil, Inc. v. Moroccan Gold, LLC*, 590 F. Supp. 2d 1271, 1282 (C.D. Cal. 2008); *Promatek Indus., Ltd. v. Equitrac Corp.*, 300 F.3d 808, 813-14 (7th Cir. 2002).   When a defendant loses its authorization to use a mark but continues to use it anyway, "the potential for consumer confusion is even greater than in cases of random infringement" and such "unauthorized use confuses and defrauds the public." *Paisa, Inc.*, 928 F. Supp. at 1013 (citation omitted) (describing the "strong public interest in preventing consumer confusion and fraud" when a former franchisee is infringing because the franchisee "becomes associated in the public's mind with the trademark holder").

## V.    CONCLUSION

Despite their knowledge of the expiration of PlayBev's License Agreement, Defendants continue to infringe the Playboy Marks by using them to advertise, market, promote, distribute, and sell Playboy Energy Drink.  Defendants blatantly

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA 90067
310-229-9900

14

6266826-v10

1   display the Playboy Marks and capitalize on Playboy's valuable brand.  This

2   egregious, intentional conduct is irreparably injuring Playboy's control over its

3   goodwill and the quality of the Playboy Marks, as well as Playboy's reputation

4   and its business interests in the energy drink category itself, and it must be

5   stopped.

6          For the foregoing reasons, Playboy respectfully requests that this Court

7   grants its Motion for Preliminary Injunction.

8

9

10  Dated:  December 10, 2012                    VENABLE LLP

11

12                                              By: _____

13                                                  Richard J. Frey
                                                    Tamany Vinson Bentz
14                                                  Melissa C. McLaughlin
                                                    Attorneys for Plaintiff Playboy
15                                                  Enterprises International, Inc.

16

17

18

19

20

21

22

23

24

25

26

27

28

VENABLE LLP
2049 CENTURY PARK EAST, SUITE 2100
LOS ANGELES, CA  90067
310-229-9900

MOTION FOR PRELIMINARY INJUNCTION

6266826-v10